UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ATCHAFALAYA BASINKEEPER,
INC., ET AL.

CIVIL ACTION

VERSUS

NO: 21-317

UNITED STATES ARMY CORPS OF
ENGINEERS

SECTION: "A" (5)

## ORDER AND REASONS

The following motions are before the Court: **Motion for Summary Judgment (Rec. Doc. 15)**, filed by Defendant United States Army Corps of Engineers ("USACE"), and **Motion to Defer/Deny Defendant's Motion for Summary Judgment (Rec. Doc. 28)**, filed by Plaintiffs Atchafalaya Basinkeeper, Inc. ("Atchafalaya"), Louisiana Crawfish Producers Association-West, and Healthy Gulf. Both motions are opposed. The motions, submitted for consideration on November 10, 2021, and October 27, 2021, respectively, are before the Court on the briefs without oral argument.[1] For the reasons that follow, the Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART and the Motion to Defer/Deny is DENIED.

## I.    BACKGROUND

This Freedom of Information Act ("FOIA") case involves a dispute between Plaintiffs and the Defendant federal agency, USACE. Plaintiffs filed this lawsuit under the

---

[1] Oral argument has been requested but the Court is not persuaded that oral argument would be helpful.

FOIA, 5 U.S.C. § 552, to remedy the alleged failure of USACE to timely respond to and produce any or all responsive records for eight FOIA requests concerning projects in the Atchafalaya Basin. (Rec. Doc. 16 at ¶ 3, First Amended Complaint).

On December 12, 2018, January 21, 2020, September 23, 2020, November 4, 2020, November 24, 2020, and December 10, 2020, Plaintiffs submitted a total of eight FOIA requests to USACE. (*Id.*). According to Plaintiffs, these requests were related to assessing damage to the Atchafalaya Basin caused by sedimentation from USACE's water diversion projects, or plans and permits for similar projects in the basin. (*Id.*). Plaintiffs filed this lawsuit against USACE on February 12, 2021, alleging *inter alia* that since receiving the requests, USACE has withheld information from Plaintiffs through its complete failure to respond to some record requests, its delayed responses to others, and its ongoing improper withholding of records responsive to seven of their eight requests. (*Id.* at ¶ 4).

Specifically, Plaintiffs claim that USACE has violated, and continues to violate, 5 U.S.C. § 552(a)(3) of the FOIA by failing to perform an adequate search for records responsive to the requests and failing to promptly disclose records responsive to the requests by either withholding all responsive records or producing incomplete responsive records. (*Id.* at ¶¶ 112, 115–16, 118, 121–22, 125–27, 130–32, 135–37, 140–42, 145–47). As to the East Grand Lake Request and the Bayou Bridge Request[2], Plaintiffs also allege that USACE violated § 552(a)(6)(4) of the FOIA by failing to notify Plaintiffs that it

---

[2] The East Grand Lake Request and the Bayou Bridge Request were both submitted on December 12, 2018. *See infra* Part III.A.i. for a full description of both requests.

would withhold responsive records and by failing to communicate the scope of the documents produced or withheld. (*Id.* at ¶¶ 113–14, 119–20). For the other six requests, Plaintiffs allege that USACE violated, and continues to violate, § 552(a)(6)(A) of the FOIA by failing to respond to the requests within 20 working days with a determination of whether it would comply or, if not, the reasons therefor. (*Id.* at ¶¶ 124, 129, 134, 139, 144). Finally, Plaintiffs allege that USACE has violated, and continues to violate, § 552(a)(7) of the FOIA because USACE did not provide estimated dates for completing its action on each request and did not provide Plaintiffs with tracking numbers timely or at all for the December 2018 and January 2020 requests. (*Id.* at ¶¶ 148–51).

Plaintiffs seek a declaration from this Court that USACE's withholding of responsive records, failure to provide a response describing the scope of the records produced or withheld, failure to respond to the requests with a determination within 20 working days, and failure to perform an adequate search violates the FOIA. (*Id.* at p. 26, ¶¶ 1–4). Plaintiffs also request a declaration that USACE has a pattern, practice, or policy of violating the FOIA through its failure to respond to Plaintiffs' FOIA and status requests timely or at all, and its failure to provide estimated dates or tracking numbers for said requests. (*Id.* at p. 27, ¶ 7–8). Second, Plaintiffs request the Court to order USACE to comply with the FOIA and immediately produce all records unlawfully withheld. (*Id.* at pp. 26–27, ¶¶ 5–6, 9). Plaintiffs also seek an order enjoining USACE from improperly withholding any records and continuing its pattern, practice, or policy of violating the FOIA. (*Id.*). Third, Plaintiffs request a written finding that the circumstances surrounding USACE's unlawful withholding of records responsive to its requests raises questions of

whether USACE acted arbitrarily or capriciously. (*Id.* at p. 27–28, ¶ 11). Finally, Plaintiffs request attorney's fees and other litigation costs to be assessed against USACE. (*Id.* at p. 27, ¶ 10).

On June 22, 2021, Defendant USACE filed a motion for summary judgment (Rec. Doc. 15). USACE argues that contrary to Plaintiffs' allegations, USACE searched for and found responsive documents, if they existed, to each of the eight subject FOIA requests and USACE produced all responsive documents without a single withholding, whether in whole or in part. (Rec. Doc. 15-1 at p. 10). A declaration by Stephen C. Roth, District Counsel and FOIA Officer for USACE in the New Orleans District, is attached in support of USACE's motion. (Rec. Doc. 15-2, Roth Declaration). According to USACE, the Roth Declaration establishes that its searches were made in good faith and were reasonably calculated to locate documents responsive to Plaintiffs' FOIA requests. (Rec. Doc. 15-1 at p. 15). USACE claims the declaration also proves that USACE did not withhold any documents from Plaintiffs. (*Id.*). For these reasons, USACE argues that it is entitled to summary judgment. (*Id.*)

Plaintiffs oppose the motion, arguing that (1) the motion fails to address the legal or factual questions raised by Plaintiffs, including their pattern and practice claims, (2) USACE "confirms the agency's habitual and unabashed practice of ignoring the FOIA's timing requirements . . . on all eight of Plaintiffs' requests," and (3) USACE fails to meet its burdens on Plaintiffs' more traditional claims. (Rec. Doc. 51 at pp. 1–2). Regarding the third assertion, Plaintiffs elaborate that USACE has not adequately responded to the East

Grand Lake Request and Beau Bayou Request[3], has not produced specific records, and did not adequately search for responsive records. (*Id.* at p. 4).

On July 20, 2021, Plaintiffs filed a Motion to Defer or Deny Defendant's Motion for Summary Judgment for prematurity or, alternatively, to extend the response time to allow Plaintiffs adequate time for discovery to oppose the motion. (Rec. Doc. 28). Plaintiffs claim that USACE's Motion for Summary Judgment is premature because USACE did not address Plaintiffs' pattern, policy, or practice claims and because Plaintiffs need more discovery. (Rec Doc. 28-1 at p. 3). USACE opposes the motion, asserting that discovery is premature at this stage of the litigation in an FOIA case and that its Roth Declaration is accorded a presumption of good faith. (Rec. Doc. 44 at pp. 1–2). USACE attached a supplemental declaration by Stephen Roth[4] addressing Plaintiffs' concerns regarding USACE's delays in responding to the requests and the circumstances surrounding later-found responsive documents. (*Id.* at p. 4).

Given that this Court recently denied Plaintiffs' Motion to Appeal the Magistrate Judge's Decision to grant Defendant's motion for a protective order (Rec. Doc. 61, Order Denying Motion for Appeal), and that, consequently, discovery in this matter is prohibited until the pending motion for summary judgment and the sufficiency of the accompanying declarations are decided, Plaintiffs' Motion to Defer/Deny (Rec. Doc. 28) is denied as

---

[3] The East Grand Lake Request was submitted on December 12, 2018, and the Beau Bayou Request was submitted on January 21, 2020. *See infra* Part III.A.i–ii. for a full description of both requests.

[4] USACE cited to the Roth Supplemental Declaration (Rec. Doc. 44-1) in its reply brief in support of the Motion for Summary Judgment. (*See* Rec. Doc. 56 at p. 1 n. 1).

moot. However, the parties' respective briefing on the Motion to Defer/Deny was considered by the Court in deciding the present Motion for Summary Judgment.

The Court will now assess the merits of USACE's Motion for Summary Judgment.

## II.   **LEGAL STANDARD**

"[M]ost FOIA cases are resolved at the summary judgment stage." *Flightsafety Servs. Corp. v. Dep't of Labor*, 326 F.3d 607, 610 (5th Cir. 2003) (quoting *Cooper Cameron Corp. v. United States Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002)). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d 704, 707–08 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if it "might affect the outcome of the suit." *Anderson,* 477 U.S. at 248. When considering a motion for summary judgment, the court must view all facts and evidence in the light most favorable to the non-movant and draw all reasonable inferences in that party's favor. *Juino v. Livingston Par. Fire Dist. No. 5,* 717 F.3d 431, 433 (5th Cir. 2013); *Anderson*, 477 U.S. at 255.

In the FOIA context, however, the traditional summary judgment standard is modified because "the threshold question in any FOIA suit is whether the requester can even *see* the documents the character of which determines whether they can be released." *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (quoting *Cooper Cameron*, 280 F.3d at 543) (emphasis in original). Accordingly, the FOIA statute provides that when

the Government withholds information from disclosure, the agency has the burden to prove de novo that the information is exempt from disclosure. *Id.* (citing 5 U.S.C. § 552(a)(4)(B)). Specifically, the statute states that federal district courts:

> [have] jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth . . . and the burden is on the agency to sustain its action.

5 U.S.C. § 552(a)(4)(B).

In applying this standard, the Court is mindful of the purpose behind the FOIA, which was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). Exemptions to disclosure are explicitly limited by statute and should be construed narrowly. *Batton*, 598 F.3d at 175 (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). The agency may satisfy its burden of proof through the submission of affidavits that identify the documents at issue and explain why they fall under the claimed exemption. The affidavits must be clear, specific, and reasonably detailed while describing the withheld information in a factual and nonconclusory manner. *Gahagan v. United States Citizenship and Immigration Services*, No. 15-2540, 147 F.Supp.3d 613, 621 (E.D. La. 2015) (Vance, J.) (citing *Cooper Cameron*, 280 F.3d at 543).

The agency's affidavits and declarations are entitled to a "presumption of legitimacy" unless there is evidence of bad faith in handling the FOIA request. *Batton*,

598 F.3d at 176 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991)). If the agency meets these requirements, the court will normally accord the affidavits substantial weight. *Gahagan*, 147 F.Supp.3d at 621. The presumption of legitimacy, however, does not relieve the agency of its burden to sustain its action. *Batton*, 598 F.3d at 176.

## III.   DISCUSSION

### A.   Adequacy of USACE's Searches for Responsive Records

As a threshold matter, we must first address whether USACE's searches for responsive documents were adequate. *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010). An agency may demonstrate that it conducted an adequate search by showing that it used "methods which can be reasonably expected to produce the information requested." *Batton*, 598 F.3d at 176 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The question the court must decide is whether the search was adequate, not whether other documents may exist that were not located in the search. *Id.* (See *In re Wade*, 969 F.2d 241, 249 n. 11 (7th Cir. 1992) ("The issue is *not* whether other documents may exist, but rather whether the search for undisclosed documents was adequate."); *Oglesby*, 920 F.2d at 68 ("There is no requirement that an agency search every record system.").

USACE has submitted two declarations of Stephen C. Roth, District Counsel and FOIA Officer for the USACE in the New Orleans District, referred to as the Roth Declaration (Rec. Doc. 15-2) and the Roth Supplemental Declaration (Rec. Doc. 44-1). We will now determine whether USACE has demonstrated, through the declarations, that it conducted adequate searches for all eight requests.

### i. December 2018 Requests

On December 12, 2018, Plaintiff Atchafalaya submitted two FOIA requests to USACE, referred to in the complaint as the "East Grand Lake Request" and the "Bayou Bridge Request" or collectively the "December 2018 Requests." (Rec. Doc. 16 at ¶¶ 36, 38, First Amended Complaint). The East Grand Lake Request sought the following records:

> Any and all permit decision documents related to the Proposed Ecological Swamp Enhancement Project (East Grand Lake) in the Atchafalaya Basin (MVN 2016-01163-CM); and

> Any and all records related to the Proposed Ecological Swamp Enhancement Project (East Grand Lake) in the Atchafalaya Basin (MVN 2016-01163-CM), including but not limited to: pending permit application(s) before the agency, including initial and/or supplemental drafts; any draft or final environmental assessment(s); and any additional records pertaining to the above-referenced project.

(*Id.* at ¶ 36). The Bayou Bridge Request requested the following records:

> Any and all records related to permit enforcement - including but not limited to enforcement actions, site inspections, and correspondence regarding permit compliance or questions/concerns therewith - with respect to the following two permittees and permitted actions: Bayou Bridge Pipeline, LLC (BBP), Perennial Environmental Services, LLC (Permit No. MVN-2015-02295-WII), Enterprise Products Operating, LLC (Permit No. MVN-2015-01668-WII).

(*Id.* at ¶ 38).

The Roth Declaration states that, upon receiving the requests, USACE identified its Regulatory Department and the subject matter experts therein as the appropriate point of contact because the requests pertained to permits, permit violations, and enforcement actions. (Rec. Doc. 15-2 at ¶¶ 7–8, Roth Declaration).

As to the East Grand Lake Request, USACE reached out to four members of the district's Regulatory Department—Neil Gauthier, Brad Guarisco, James Little, and Martin Mayer—sending them a copy of the request and asking them to produce records responsive to the request. (*Id.* at ¶ 7). USACE determined that Mr. Gauthier would be the appropriate subject matter expert for this particular FOIA request as he was the employee within the Regulatory Department working directly on the East Grand Lake project. (*Id.*). Mr. Gauthier keeps project records electronically on his computer, indexed and searchable by permit number. (*Id.*). Using the permit number provided by the requestor, Mr. Gauthier searched for documents responsive to the FOIA request on his computer. (*Id.*). On February 27, 2019, and October 3, 2019, Mr. Gauthier provided the records found to Fred Wallace, the FOIA coordinator at the time, who would have reviewed the records for their responsiveness and potential withholdings. (*Id.*). On October 10, 2019, Plaintiff Atchafalaya was provided a written response letter to the East Grand Lake Request and the records collected in their entirety. (*Id.*).

Plaintiffs allege that the search was inadequate *inter alia* because Ms. Misha Mitchell, staff attorney for Plaintiff Atchafalaya, testified that other responsive documents exist, such as pre-application meeting minutes and comments submitted pursuant to USACE's public notice, and yet Atchafalaya did not receive such documents. (Rec. Doc. 51-1 at p. 5, Mitchell's Second Declaration). However, the question the Court must decide is whether the search performed was legally adequate, not whether other documents exist that were not located in the search. And the Court finds that USACE has met its burden

of establishing that it conducted a legally adequate search for the East Grand Lake Request.

For the Bayou Bridge Request, the Roth Declaration states that USACE reached out to Brad Guarisco, the district's point of contact for regulatory surveillance and enforcement actions, providing him with a copy of the request and asking for responsive documents. (*Id.* at ¶ 8). Mr. Guarisco forwarded USACE the email correspondence that he had received directly from Ms. Mitchell, staff attorney for Plaintiff Atchafalaya, regarding alleged permit violations. (*Id.*).

Mr. Guarisco also directed USACE to James Little in the Regulatory Department as the appropriate subject matter expert to provide records or assist in the response. (*Id.*). The declaration states that "[m]ost of the records that Mr. Little kept with regard to this project were in hard copy form," which he provided, and if the records were not kept in hard copy, Mr. Little searched for "Bayou Bridge Pipeline" on an online internal database and produced a hard copy of any results. (*Id.*). On October 23, 2019, Plaintiff Atchafalaya was provided a written response letter to the East Grand Lake Request and was provided the entirety of those records and a final response letter. (*Id.*).

Plaintiffs allege that USACE did not produce specific records in response to Bayou Bridge Request and, therefore, the response is incomplete. For example, Ms. Mitchell claims that she reported potential permit violations to USACE and USACE indicated that it was investigating and enforcing those violations, yet USACE did not respond with records regarding such reports or investigations or disclose that it was withholding such documents. (Rec. Doc 51-1 at pp. 5–6, Mitchell's Second Declaration).

Again, the question that this Court must answer is whether the search was legally adequate, not whether other documents may exist that were not located in the search. And here, notwithstanding Plaintiffs' suggestions that USACE failed to produce relevant documents, the Court finds that USACE has not met its burden of establishing that it conducted a legally adequate search for the Bayou Bridge Request. Although the employee who searched for responsive records was identified in the Roth Declaration, the declaration lacks details about how his searches were conducted or what specific resources were searched.

The Court grants USACE's Motion for Summary Judgment as to its search for documents responsive to the East Grand Lake Request but denies the motion as to its search for the Bayou Bridge Request. Because the Court is unable to evaluate the adequacy of the search for the latter request due to the insufficiency of the USACE's declarations, the Court further orders Defendant to submit within 60 days a more detailed declaration describing the processes and procedures followed by USACE when completing this request. If appropriate thereafter, the parties may renew their motions for summary judgment as to this particular issue.

### ii.  January 2020 Requests

On January 21, 2020, Plaintiff Atchafalaya submitted two FOIA requests to USACE, referred to in the complaint as the "First Buffalo Cove Request" and the "Beau Bayou Request," or collectively the "January 2020 Requests." (Rec. Doc. 16 at ¶¶ 58, 60). The First Buffalo Cove Request requested:

Final permit for the Buffalo Cove Management Unit elements granted as part of the final selected plan for the 2003 Environmental Assessment (EA)

#366, "Atchafalaya Basin Floodway System, Buffalo Cove Management Unit, Water Circulation Improvements and Sediment Management Unit" (the Original BCMU permit circa 2004).

(*Id.* at ¶ 58). USACE initiated the search for records responsive to the first part of the request with the Regulatory Department. (Rec. Doc. 15-2 at ¶ 9). However, because this portion pertained to a civil works project completed by USACE, the Regulatory Department informed USACE that it would not have issued a permit and referred USACE to the Regional Planning and Environmental Division South ("RPEDS"). (*Id.*). In his first declaration, Mr. Roth explains why RPEDS, and the subject matter experts therein, were the appropriate starting point for the records search. (*Id.*). He lists the specific RPEDS employees who performed the various searches and describes exactly what each employee searched. (*Id.*). The remainder of the request was handled by Ms. Martha Lucore from USACE's Programs and Project Management Division. (*Id.*). Mr. Roth states that Ms. Lucore spoke to the requestor and confirmed that the responsive documents she searched for and found would satisfy the request. (*Id.*). On December 4, 2020, a final response was provided to Plaintiff Atchafalaya with the entirety of the records collected. (*Id.*). The Court finds that USACE has established that it performed a legally adequate search for the First Buffalo Cove Request.

The Beau Bayou Request sought the "Final Permit for 'Water Quality Enhancement Project in St. Martin Parish,' Beau Bayou Water Management Unit (MVN-2015-01796-WLL)." (Rec. Doc. 16 at ¶ 60, First Amended Complaint). According to Mr. Roth, Ms. Lucore indicated that the project referred to in the request had not yet commenced and, thus, no records existed. (*Id.*). The request was closed out internally as

having been responded to, but no documentation can be located affirming that a response was sent to the requestor. (*Id.*).

Simply stating that "no records existed" is not enough to establish that the search was adequate. Instead, the declaration should detail what resources USACE used to determine whether the project had commenced and how the preliminary search was conducted. Regardless of whether the project was in process or not, there should have been searches conducted for the permit undergirding the project. Therefore, the Court finds that USACE's declaration does not establish that USACE's search on the Beau Bayou Request was legally adequate.

The Court grants USACE's Motion for Summary Judgment as to its search for documents responsive to the First Buffalo Cove Request but denies the motion as to its search for the Beau Bayou Request. Within 60 days of this order, USACE must submit a more detailed declaration describing the processes and procedures followed when completing the Beau Bayou Request. If appropriate thereafter, the parties may renew their motions for summary judgment on this particular issue.

### iii.  Second Buffalo Cove Request

On September 23, 2020, Atchafalaya submitted a FOIA request to USACE, referred to as the "Second Buffalo Cove Request," requesting records as follows:

Any and all records of the Corps' decision documents with respect to the proposed Buffalo Cove Management Unit - Element 10 and Environmental Assessment #441, including but not limited to the following:
    a.  Final Design Document(s);
    b.  Final Engineering Document(s);
    c.  Final Environmental Assessment #441;
    d.  Any comments, pending agreements, and/or approvals from other agencies; and

e. A complete description of the project design and purpose, area description, mapping, and extent of the proposed dredging activity.

(Rec. Doc. 16 at ¶ 76, First Amended Complaint).

As with the previous searches, the Roth Declaration names the specific employees contacted regarding this request who aided in finding responsive documents or located the correct subject matter experts. (Rec. Doc. 15-2 at ¶ 11). The searches that resulted in documents responsive to this request are described by employee, search term, and resource searched. (*Id.*). Ms. Conti, Assistant District Counsel for USACE, reviewed the records produced for responsiveness and potential withholdings, and sent the entirety of those records to Plaintiff Atchafalaya on March 30, 2021. (*Id.*). The Court is persuaded that USACE has met its burden of establishing that it conducted a legally adequate search for the Second Buffalo Cove Request. USACE's Motion for Summary Judgment is granted as to this search.

### iv. Third Buffalo Cove Request

On November 4, 2020, all Plaintiffs, through their counsel, submitted a FOIA request to USACE, referred to as the "Third Buffalo Cove Request," requesting records as follows:

Any and all documents related to the issuance of the 2018 Public Notice for the "Atchafalaya Basin Floodway System, Louisiana Project, Buffalo Cove Management Unit, Management Unit Feature Element 10."

The list of names and addresses to whom the Public Notice was sent, as well as the dates that the Public Notice was sent.

The URL of any online location where the Public Notice was posted, and the dates on which it was posted, and the location of any physical location where the Public Notice was posted, and the dates on which it was posted.

Page 15 of 24

Any and all public comments received in response to the Public Notice.

(Rec. Doc. 16 at ¶ 86, First Amended Complaint).

Similar to the previous request, the Roth Declaration lists the specific employees contacted about this request who aided in finding responsive documents or located the correct subject matter experts. (Rec. Doc. 15-2 at ¶ 12). The searches that resulted in responsive documents are described by employee, search term, and resource searched. (*Id.*). Additionally, the declaration describes the types of documents that were found within the resources searched. (*Id.*). Ms. Conti, Assistant District Counsel for the USACE, reviewed the records produced for responsiveness and potential withholdings, and sent the entirety of the records collected to Plaintiffs on March 22, 2021. (*Id.*). When contacted by the requestor for clarification of the records, Ms. Conti provided clarification via email along with additional records on May 27, 2021. (*Id.*).

The Court is persuaded that USACE has met its burden of establishing that it conducted a legally adequate search for the Third Buffalo Cove Request and grants USACE's Motion for Summary Judgment as to this search.

### v. Fourth Buffalo Cove Request

On November 24, 2020, all Plaintiffs through their counsel, submitted a FOIA request to USACE, referred to as the "Fourth Buffalo Cove Request," requesting records as follows:

> All records, documents, data, reports, measurements, charts, maps, photographs and correspondence pertaining to the monitoring of sedimentation within the "Atchafalaya Basin Floodway System, Louisiana Project, Buffalo Cove Management Unit, including but not limited to the sediment monitoring described on page 8 of Environmental Assessment

(EA) #441 pertaining to proposed Element 10, dated June 2018 (copy attached hereto).

All records, documents, data, reports, measurements, charts, maps, photographs and correspondence pertaining to the monitoring of water quality within the "Atchafalaya Basin Floodway System, Louisiana Project, Buffalo Cove Management Unit, including but not limited to the water quality monitoring described on page 8 of Environmental Assessment (EA) #441 pertaining to proposed Element 10, dated June 2018 (copy attached hereto).

All records, documents, data, reports, measurements, charts, maps, photographs, and correspondence pertaining to the goal of limiting sediment accretion to 1 inch per year in the area of influence, described on page 8 of Environmental Assessment (EA) #441 pertaining to proposed Element 10, dated June 2018 (copy attached hereto).

(Rec. Doc. 16 at ¶ 94, First Amended Complaint).

The Roth Declaration lists the specific employees contacted regarding this request who found responsive documents or identified the appropriate subject matter experts. (Rec. Doc. 15-2 at ¶ 13). The searches that resulted in responsive documents are described by employee, search term, and resource searched. (*Id.*). Ms. Conti reviewed the records produced for responsiveness and potential withholdings, and sent the entirety of the records collected to Plaintiffs on May 21, 2021. (*Id.*). The Court is persuaded that USACE has met its burden of establishing that it conducted a legally adequate search for the Fourth Buffalo Cove Request. The Court grants USACE's Motion for Summary Judgment as to this search.

### vi. December 2020 Request

On December 10, 2020, Plaintiff Atchafalaya submitted a FOIA request to USACE, referred to as the "December 2020 Request," requesting the following records:

Records of monitoring plans, reports, and data collected for the Buffalo Cove Project, including but not limited to:

a. Designed Monitoring Plan (referenced in EDR, p. 31);
b. Construction Monitoring Plan (referenced in EDR, p. 31);
c. Interim Letter Report (referenced in EDR, p. 31);
d. Monitoring Program Data (referenced in EDR, p. 31);
e. Decision Document submitted to COE after construction period, reporting operational success of the BCMU elements constructed (referenced in EDR, p. 31);Phase 3 Monitoring Report and related Decision Document (referenced in EDR, p. 37);
f. Post-construction monitoring report evaluating the effects of initial improvements post- construction for the Bayou Eugene Project completed in 1993, considered in designing the Buffalo Cove Project (referenced in the EDR, p. 9); and
g. Any and all data collected before, during and after construction the Buffalo Cove Project, including with respect to turbidity, accretion and water quality (oxygen, nitrogen and phosphorous levels).

Records for the Beau Bayou Project, including but not limited to:

a. Sediment Deposition Report(s);
b. Records related to the ecological impact(s) of the Beau Bayou Project;
c. Any and all data collected before, during and after construction of the Beau Bayou Project, including with respect to turbidity, accretion and water quality (oxygen, nitrogen and phosphorous levels); and
d. Public comments received with respect to the Beau Bayou project, and responses to comments."

(Rec. Doc. 16 at ¶ 102, First Amended Complaint).

The Roth Declaration lists the specific employees contacted regarding this request who found responsive documents or identified the appropriate subject matter experts. (Rec. Doc. 15-2 at ¶ 14). All searches resulting in documents responsive to this request are described by employee, search term, and resource searched, with the exception of the search completed by Mike Herrmann, one of the subject matter experts. (*Id.*). Mr. Roth states that Ms. Conti reached out to Mike Herrmann regarding a portion of the

request, and upon following up with Mr. Herrmann, "received responsive records." (*Id.*). This is the extent of the description of Mr. Herrmann's search. Accordingly, because the Court is unable to evaluate the adequacy of USACE's search for documents responsive to the December 2020 Request, the Court denies USACE's Motion for Summary Judgment as to this search. USACE must submit, within 60 days of this order, a more detailed declaration describing the processes and procedures it followed when completing this request. If appropriate thereafter, the parties may renew their motions for summary judgment on this particular issue.

### B. Alleged Withholdings

Plaintiffs claim that USACE has improperly withheld documents responsive to Plaintiffs' FOIA requests. USACE claims otherwise. An agency's declaration is afforded a presumption of legitimacy unless there is evidence of bad faith. *Batton*, 598 F.3d at 176. Here, after reviewing Plaintiffs' opposition and sur-reply to USACE's Motion for Summary Judgment, and the declarations and exhibits attached thereto, the Court finds that there is insufficient evidence of bad faith to rebut the presumption.

In both the first and supplemental Roth declarations, Mr. Roth avers that USACE did not withhold any of the responsive documents found for each request. (Rec. Docs. 15-2 at ¶¶ 7–14 & 44-1 at ¶ 13). In the supplemental declaration, Mr. Roth explains that some of the requested documents do not exist and, thus, were not produced for certain requests. (Rec. Doc. 44-1 at ¶¶ 18–19). He further states that USACE has found responsive quarterly and annual water quality reports that were not located in the initial search and disclosure and that USACE will provide any releasable responsive records to

Plaintiffs once the documents are processed. (*Id.* at ¶ 16). Although Plaintiffs point to the later-found water quality reports as evidence of bad faith, the Court instead finds that this discovery demonstrates a diligent, good faith effort on behalf of USACE to ensure that all responsive documents are provided to the requestor.

Therefore, the Court grants USACE's summary judgment as to Plaintiffs' claims of unlawful withholdings.

### C. <u>Policy or Practice Claims</u>

Finally, Plaintiffs claim that USACE has a pattern, practice, or policy of violating the FOIA through its failure to respond timely or at all to Plaintiffs' FOIA requests, its failure to provide tracking numbers timely or at all, and its failure to provide estimated dates for completing action on the requests. (Rec. Doc. 16 at p. 27 ¶¶ 7–8). Plaintiffs request a declaration stating such and an order enjoining USACE from continuing its pattern, practice, or policy of violating the FOIA and requiring USACE to comply with the FOIA. (*Id.* at p. 27 ¶¶ 7–9).

The FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The Act also states that federal district courts "[have] jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 522(a)(1)(4)(B). FOIA lawsuits generally become moot once an agency has made available requested non-exempt records, whether voluntarily or after court order. *Judicial Watch, Inc. v. U.S. Dep't.*

*of Homeland Sec.,* 895 F.3d 770, 778 (D.C. Cir. 2018). The D.C. Circuit, however, has recognized an exception to mootness where an agency has a "policy or practice" that "will impair the party's lawful access to information in the future." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). The D.C. Circuit interprets § 522(a)(1)(4)(B) as vesting courts with broad equitable authority, and endorses the view that pattern and practice claims arise out of a district court's "equitable power to 'enforc[e] [FOIA's] terms.'" *American Center for Law and Justice v. Federal Bureau of Investigation,* 470 F.Supp.3d 1, 4 (D.D.C. 2020) (quoting *Payne,* 837 F.2d at 494). The First Circuit and the Ninth Circuit have recognized a similar exception. *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2015); *Lybarger v. Cardwell*, 577 F.2d 764, 767 (1st Cir. 1978).

To date, there exists no Fifth Circuit case law acknowledging or addressing pattern, practice, or policy claims (hereinafter "practice or policy claims") in the FOIA context. Even if the Fifth Circuit recognized such claims, however, Plaintiffs cannot survive summary judgment.

The parties brief this issue according to the legal framework established by the D.C. Circuit. Accordingly, the Court applies the same framework for this Opinion. As articulated by the D.C. Circuit, practice or policy claims are viable when a plaintiff establishes that "an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA" as opposed to "mere[] isolated mistakes by agency officials." *Payne*, 837 F.2d at 491. And a plaintiff states a plausible practice or policy claim "by alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of

ignoring FOIA's requirements." *Judicial Watch, Inc. v. U.S. Dep't. of Homeland Sec.,* 895 F.3d 770, 780 (D.C. Cir. 2018). Plaintiffs' complaint meets these basic pleading requirements. However, where there is "unexplained agency delay" the district court is still required to determine whether the agency's conduct in violating the FOIA's procedural requirements "demonstrates a lack of due diligence and is so delinquent or recalcitrant as to warrant injunctive relief because ordinary remedies, such as a production order . . . would be inadequate to overcome an agency policy or practice." *Judicial Watch*, 895 F.3d at 783.

Plaintiffs submitted evidence showing that USACE took longer than the 20-day statutorily required time period to resolve Plaintiffs' eight requests, that USACE failed to provide estimated completion dates, and that USACE failed to provide tracking numbers. (Rec. Docs. 51-1, 51-2, 51-3). Plaintiffs also point to at least four past instances where they experienced USACE's delays. (Rec. Docs. 51-1 at ¶ 49 & 51-2 at ¶ 11). USACE acknowledges that the FOIA requests in this litigation were completed well after the 20-day period, but disputes Plaintiffs' interpretation of what is statutorily required within that time period. (Rec. Doc. 56 at pp. 3–4). In his first declaration, Mr. Roth states that, for four of the eight requests, tracking numbers were provided to Plaintiffs. (Rec. Doc. 15-2 at ¶¶ 11–14). Although there is no indication that tracking numbers were provided for the other four requests, Mr. Roth explains that USACE has a policy in favor of providing such information. (Rec. Docs. 15-2 at ¶ 3 & 44-1 at ¶ 8). Regarding USACE's failure to provide estimated dates of completion, Mr. Roth states that, while USACE's practice is to provide an estimated time, such estimates are not always feasible due to the level of

correspondence between different departments or the subject matter experts involved. (Rec. Doc. 44-1 at ¶ 20). Viewing the facts and evidence in the light most favorable to Plaintiffs, the Court finds evidence that USACE violated the FOIA's procedural requirements, but not enough to infer a "practice or policy" of violating the FOIA.

Even if the Court were to assume that USACE has a practice or policy of violating the FOIA, nothing in the record evidences recalcitrance or a lack of due diligence on the part of USACE to warrant injunctive and declaratory relief. In fact, USACE's evidence indicates good faith and due diligence. It is clear from the Roth Declaration that USACE was in direct contact with Plaintiffs, by email and phone, regarding Plaintiffs' FOIA requests. (Rec. Doc. 15-2 at ¶¶ 7–9, 11–14). Further, any delay on the part of USACE is not "unexplained." The Roth Declaration details how USACE's delays in processing during the relevant time period were largely due to the significant case load, the loss of experienced employees, and the struggle with the transition to telework during the COVID-19 pandemic. (Rec. Docs. 15-2 at ¶¶ 2, 4 & 44-1 at ¶¶ 3–7, 11). Once the searches on Plaintiffs' requests were complete, USACE quickly reviewed the records and produced them to Plaintiffs. These facts, alone, do not support a finding in Plaintiffs' favor.

In *Judicial Watch*, the court recognized that "not all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention, much less injunctive relief." *Judicial Watch*, 895 F.3d at 782. And here, there is little beyond the delays themselves that signals that USACE has a practice or policy of ignoring the FOIA's requirements. The Court finds that USACE's conduct in this case does not amount to the sort of bad faith conduct, and has not incurred the sorts of prolonged delays, that would

entitle Plaintiffs to either declaratory or injunctive relief due to an alleged policy or practice. The Court grants USACE's Motion for Summary Judgment as to Plaintiffs' practice or policy claims.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 15)** filed by Defendant USACE is **GRANTED IN PART AND DENIED IN PART** as described above.

**IT IS FURTHER ORDERED** that the **Motion to Defer/Deny Summary Judgment (Rec. Doc. 28)** filed by Plaintiffs Atchafalaya Basinkeeper, Inc., Louisiana Crawfish Producers Association-West, and Healthy Gulf is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that, in light of the Court's Order on the Motion for Summary Judgment, the protective order precluding discovery is **VACATED**. Plaintiffs are allowed to conduct limited discovery on their remaining claims regarding the adequacy of USACE's search on the Bayou Bridge Request, the Beau Bayou Request, and the December 2020 Request.

January 20, 2022

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE